UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANH THI NGO, A-071-007-750,<br>Petitioner,<br>v.<br>CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-2693 DJC AC<br><br><u>ORDER & FINDINGS & RECOMMENDATIONS</u> |

Petitioner, an immigration detainee proceeding through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

For the reasons discussed below, the undersigned grants respondents' motion for reconsideration (ECF No. 26) and recommends that the amended petition (ECF No. 16) be granted on Claims Three and Five, petitioner be immediately released from custody, and respondents be enjoined from re-detaining petitioner absent pre-deprivation procedures and from removing petitioner to a third country unless respondents provide constitutionally adequate notice and an opportunity for petitioner to present a fear-based claim.

////

////

////

I. Factual and Procedural Background[1]

Petitioner, Anh Thi Ngo (A# 071-007-750), a citizen of Vietnam, entered the United States as a refugee in 1991 and subsequently became a lawful permanent resident. ECF No. 16 at 6. In September 2006, an immigration judge ordered petitioner removed to Vietnam based on her convictions under California Health & Safety Code § 11350 and Penal Code § 273.5. Id. at 6, 8. Because ICE was unable to remove petitioner to Vietnam, ICE released petitioner on an order of supervision ("OSUP"). Id. at 6. For two decades, petitioner diligently complied with her reporting requirements and continued to build her life in the United States, where she raised her U.S. citizen daughter, cared for her elderly parents, and formed deep ties. Id.

On September 16, 2025, at petitioner's regularly scheduled check-in with Immigration and Customs Enforcement ("ICE"), an officer told petitioner that "things have changed" and that "Vietnam accepts people now." Id. at 7. The officer also asked if petitioner had been arrested two months prior, which she denied. Id. Without further discussion or explanation, the officer handcuffed her. Id. For the next two months, petitioner was detained without further explanation of the reasons for her re-detention or an opportunity to respond to those reasons. Id.

In November 2025, petitioner was interviewed to gather information to attempt to remove her to Vietnam. Id. She was not interviewed about the reasons for her re-detention or afforded an opportunity to respond to those reasons. Id.

In January 2026, an ICE officer told petitioner that the Vietnamese government denied the agency's application for petitioner's travel documents. Id. On March 12, 2026, an ICE officer conducted a six-month post-order custody review and re-iterated the Vietnamese's government's denial of the travel documents. Id. Petitioner's counsel asked ICE if the agency was considering removal to a third country. Id. The officer responded that the agency "would follow its process." Id.

On April 9, 2026, through counsel, petitioner filed a petition for writ of habeas corpus,

[1] Because respondents did not deny petitioner's factual allegations in response to the petition, the facts contained therein are deemed admitted and will be relied upon, unless the record reflects contrary facts. See ECF No. 8; Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

alleging that petitioner's re-detention violates 8 U.S.C. § 1231(a)(3) and (a)(6) (Claim One), procedural due process (Claim Three) and substantive due process (Claim Four) under the Fifth Amendment; that petitioner's prolonged detention violates 8 U.S.C. § 1231(a)(6) and substantive due process (Zadvydas) (Claim Two); and that the government's third country removal policies violate the Fifth Amendment Due Process Clause, 8 U.S.C. § 1231, the Convention Against Torture ("CAT"), and governing regulations (Claim Five). ECF No. 1 at 25-29.

Respondents filed an opposition arguing that there is a significant likelihood of petitioner's removal because respondents obtained a travel document for petitioner. ECF No. 9. Respondents attached a copy of a Vietnamese passport issued in petitioner's name on March 12, 2026, and valid until September 12, 2026. ECF No. 9-1. Respondents also filed a supplemental opposition stating that petitioner was scheduled to be removed via a charter flight on May 5, 2026. ECF No. 10.

Petitioner filed a reply arguing: (1) the opposition fails to address petitioner's claims regarding statutory, regulatory, and constitutional violations committed at the time of her re-detention; (2) a travel document procured months after re-detention did not cure the violations at the time of re-detention; and (3) a travel document and unverified assertions of an anticipated removal date do not establish a significant likelihood of removal in the reasonably foreseeable future, particularly where the government has misled petitioner and counsel about procurement of travel documents, petitioner was not removed despite travel documents, and an expert declaration documents the United States failure to remove Vietnamese people even after the issuance of a travel document. ECF No. 11.

On April 20, 2026, the court found that, based on the petitioner's travel document and scheduled flight, the court could not, under 8 C.F.R. § 241.13(f), reasonably find that removal in the reasonably foreseeable future was not significantly likely. ECF No. 12 at 2. Accordingly, the court found that it "is no longer clear whether Petitioner is entitled to relief as required by 8 U.S.C. § 2243," and ordered respondent to file a status report on or before May 6, 2026, regarding the status of petitioner's removal. Id.

On April 27, 2026, petitioner filed a notice informing the court of the following: (1)

petitioner's criminal convictions that were the basis of her 2006 removal order had been vacated based on legal error; (2) petitioner filed a motion to reopen and terminate removal proceedings based on this vacatur; (3) petitioner sought and was granted an emergency stay of removal pending resolution of her motion to reopen and terminate. ECF No. 13. Petitioner reasserted the claims in her petition and urged the court to find that her removal is not significantly likely in the reasonably foreseeable future based on the stay of her removal. Id. at 2.

On May 6, 2026, in response to the court's order, respondents filed a status report confirming that petitioner filed a motion to reopen and terminate before the immigration court and that the immigration court granted a stay of removal pending a decision on the motion. ECF No. 14 at 1. The status report also argues that petitioner cannot establish her burden under Zadvydas because she has taken steps to delay the execution of her removal by challenging her removal and a decision on the pending motion is anticipated soon. Id. at 2.

The district judge issued a minute order stating, "based on the subsequent information provided, it is no longer clear whether Petitioner is entitled to relief as required by 8 U.S.C. § 2243" and referred the matter to the magistrate judge. ECF No. 15.

On May 14, 2026, petitioner filed an amended petition. ECF No. 16.[2] The court issued a briefing order directing respondents to file a response and ordering that the response must include specific documents concerning petitioner's current and past custody. ECF No. 18. Respondents filed an opposition, and petitioner replied. ECF No. 19, 20. Petitioner also filed a notice and status report informing the court that she had timely appealed the immigration judge's denial of her motion to reopen and terminate, and that the travel document provided by respondents expired September 12, 2026. ECF Nos. 22, 24.

Because respondents failed to produce the required documents along with their answer, the court issued a minute order directing them to correct this error. ECF No. 25. In response, respondents filed a motion for reconsideration of the court's minute order. ECF No. 26.

////

---

[2] Respondents did not oppose the filing of the amended petition. Id. at 2.

II. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

"District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

III. Discussion

A. Respondents' Request for Reconsideration (ECF No. 26)

Respondents ask the court to reconsider its October 21, 2026, order (ECF No. 25), which directed compliance with the court's prior order (ECF No. 18) to include with their response "petitioner's Form I-213 for each immigration encounter, any orders of release or detention, any custody warrants, notices, or decisions, and if respondents dispute any factual representations in the operative petition, any and all documents necessary to support their view of the facts." ECF No. 26. Respondents argue that (1) "it was not oversight that caused the non-filing; rather it was an intentional litigation choice based on the issues presented in this case"; (2) the evidence is "not relevant to the Court's evaluation of the legality of her current confinement"; and (3) respondent "request the discretion to select the documents to be filed in support of their position under the party presentation principle." ECF No. 26 at 1-2.

The court disagrees with respondents as to relevance and the propriety of the orders at issue. The documents which were ordered to be produced are relevant to the determination whether petitioner's re-detention was lawful in the first place. Nonetheless, in the interests of

expediency and judicial economy, the court will accept respondents' litigation choice and not require further evidence. Instead of delaying the proceedings to enforce the prior orders, the court will construe the failure to produce the requested documents as a concession by respondents that the facts supported by petitioner's record are undisputed.[3] The motion for reconsideration is granted to the extent that respondent is relieved from compliance with the orders to produce additional records.

B. Petition for Writ of Habeas Corpus

i. Overview

The amended petition asserts five separate claims for relief. ECF No. 16. In Claim One, petitioner asserts her re-detention beyond the 90-day removal period violates 8 U.S.C. § 1231(a)(3) and (a)(6). Id. at 11-13, 27. In Claim Two, petitioner asserts her prolonged detention violates 8 U.S.C. § 1231(a)(6) and the Fifth Amendment Due Process Clause because her removal is not reasonably foreseeable. Id. at 13-15, 28. In Claim Three, petitioner asserts her re-detention without meaningful notice of the reasons for the revocation of release and an opportunity to contest those reasons violated her procedural due process rights under the Fifth Amendment Due Process Clause. Id. at 15-21, 29-30. In Claim Four, petitioner asserts her re-detention, where she presents no flight risk or danger to the community, is unjustified and punitive in violation of her substantive due process rights under the Fifth Amendment Due Process Clause. Id. at 21-23, 30. Lastly, in Claim Five, petitioner asserts the government's third country removal policies violate the Fifth Amendment Due Process Clause, 8 U.S.C. § 1231, the Convention Against Torture ("CAT"), and governing regulations. Id. at 23-27, 31.

According to the petitioner, the amended petition "reflect[s] several developments since she filed her original petition," such as the government producing a travel document, the pending motion to reopen and terminate removal proceedings in light of the vacatur of her criminal convictions underlying her removal order, and stay of removal pending adjudication of said

[3] In a footnote, respondents also request that the court "either rescind the no-transfer order or reach the merits of the case as soon as possible." ECF No. 26 at 2 n.1. The request is granted to the extent these findings and recommendations provide a recommendation on the merits.

motion, and "strengthen[s] her claims for release." Id. at 2. The amended petition asserts that the pending motion and stay of removal show her removal is not significantly likely in the reasonably foreseeable future, particularly considering that appeals to the Board of Immigration Appeals ("BIA") and Ninth Circuit will likely result in years of litigation concerning petitioner's removal. Id. at 2, 8, 14, 28. With respect to her claims based on her re-detention, petitioner asserts the statutes and regulations governing post-removal order detention and the Fifth Amendment required respondents to (a) identify a basis for her re-detention at the time of her arrest, (2) comply with their regulations requiring notice of the reasons for revocation of release and an informal interview to respond to those reasons, and (3) provide petitioner pre-deprivation notice and hearing before a neutral arbiter at which ICE must show changed circumstances, that existed at the time ICE sought to re-detain petitioner, warranted re-detention. Id. at 11-12, 15-21, 27-30.

In opposition to the petition, respondents argue (1) petitioner cannot satisfy her initial burden under Zadvydas because she has taken steps to delay the execution of her removal by taking advantage of the statutory scheme which allows her to challenge her removal; (2) petitioner's removal is significantly likely in the reasonably foreseeable future because respondents have a travel document for petitioner and will reschedule her flight and removal if the immigration judge denies her motions; and (3) if the immigration judge grants the motion, petitioner will no longer be subject to a final order of removal and the detention authority in this case will change. ECF No. 19 at 1-2. For these reasons, respondents propose that petitioner be required to file a status report within thirty days of the immigration judge considering all relevant briefing on the motion, and request that, because the procedural history is essentially undisputed, they not be required to file any supplemental documents. Id. at 2.

In reply, petitioner highlights the fact that respondents fail to address petitioner's re-detention claims, and produce relevant evidence regarding her re-detention, and that the violations that occurred at the time of her re-detention cannot be cured by a later acquired travel document. ECF No. 20 at 1-4. Petitioner also argues that she has satisfied her burden under Zadvydas because the United States inability to remove her in the past and the stay of removal pending resolution of her motion to reopen and terminate removal proceedings establish good

reason to believe her removal is not significantly likely in the reasonably foreseeable future. Id. at 5-6.

For the reasons discussed below, the undersigned finds that (1) petitioner's re-detention on September 16, 2025, violated her procedural due process rights, and recommends the petition be granted on Claim Three; (2) the current third-country removal policies violate due process and present a real risk to petitioner such that the petition should be granted on Claim Five; and (3) all other claims should be dismissed without prejudice.

ii. Claim Three – Re-Detention Violated Procedural Due Process under the Fifth Amendment

The amended petition asserts two distinct procedural due process violations in Claim Three: (1) before ICE could re-detain and revoke petitioner's release on OSUP, due process required a pre-deprivation hearing before a neutral arbiter to determine whether ICE had met its burden to justify re-detention, and (2) due process required ICE follow its own procedural regulations to revoke petitioner's release. ECF No. 16 at 15-21, 29-30. As noted above, despite multiple opportunities to do so, respondents have not responded to these claims.

1. Legal Standard

The Fifth Amendment Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). These due process rights extend to immigration proceedings, including detention and deportation proceedings. Id. at 693-94; see also Demore v. Kim, 538 U.S. 510, 523 (2003).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." Id. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

Courts examine procedural due process claims in two steps: the first is to determine whether there exists a protected liberty interest under the Due Process Clause, and the second is to examine the procedures necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

To determine what process is due, the court considers three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206-07.

2. Analysis

a. Petitioner Has a Protected Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. Individuals conditionally released from detention, subject to regular reporting requirements or other restrictions, have a protected interest in their "continued liberty." Morrissey v. Brewer, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same in the context of probation). Courts have recognized that, with the passage of time, a protectable liberty interest can "crystallize[ ]" even where an individual was released from prison in error, where the individual "reasonably thought the release was deliberate and lawful." See Hurd v. D.C., Gov't, 864 F.3d 671, 683–84 (D.C. Cir. 2017).

In examining "the nature of the interest of a parolee in his continued liberty," the Supreme Court in Morrissey explained:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

Morrissey, 408 U.S. at 482. Considering these aspects, the Supreme Court found that

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

Id.

In Gagnon, the Supreme Court reached the same conclusion with respect to the nature of the interest of a probationer in his continued liberty. Gagnon, 411 U.S. 778, 782. In finding no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation," the Supreme Court explained that "[p]robation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." Id.

Several courts, including this court, have found that when the government grants a noncitizen supervised release, it creates a protected liberty interest subject to Due Process Clause protections. Pham v. Warden, 833 F. Supp. 3d 1092, 1113 (E.D. Cal. 2026) (finding noncitizen released on OSUP post-final order of removal had a protected liberty interest to his continued liberty); Viengkhone S. v. Albarran, 817 F. Supp. 3d 901, 911-13 (E.D. Cal. 2025) (same); Meneses v. Santa Cruz, 811 F. Supp. 3d 1158, 1161-63 (C.D. Cal. 2025) (same); Vu v. Lyons, No. 5:26-cv-2930 KES, 2026 WL 1722908, at *9 (N.D. Cal. June 11, 2026) (same); J.L.R.P. v.

Wofford, No. 1:25-cv-1464 KES SKO, 2025 WL 3190589, at *8 (E.D. Cal. Nov. 14, 2025) (same); Avila v. Kaiser, No. 25-cv-6676 RFL, 2025 WL 2419262, at *3-5 (N.D. Cal. Aug. 21, 2025) (same); see also Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021 (N.D. Cal. 2025) ("It is well-established that the liberty interest that arises upon release [from immigration detention] is '*inherent* in the Due Process Clause.'" (citing Pruitt v. Heimgartner, 620 F. App'x 653, 657 (10th Cir. 2015) (quoting Boutwell v. Keating, 399 F.3d 1203, 1212 (10th Cir. 2005) (emphasis in Pruitt)). Some courts have also recognized that "given the civil context of immigration proceedings," the liberty interest of a noncitizen—like petitioner—conditionally released from immigration detention "is arguably greater than the interest of parolees in Morrissey," or probationers in Gagnon. Larios v. Albarran, No. 25-cv-8799 AMO, 2025 WL 3043391, at *7 (N.D. Cal. Oct. 31, 2025) (quoting Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); Guillermo M.R., 791 F. Supp. 3d at 1030 (same).

Like the individuals in Pham, Viengkhone, Meneses, Vu, J.L.R.P., Avila, and Guillermo M.R. and more so than the individuals in Morrissey and Gagnon, petitioner has a liberty interest in her continued release. For almost two decades, petitioner remained out of custody and in compliance with her release on OSUP. She raised her U.S. citizen daughter, cared for her elderly parents, and formed deep ties. She did so in reliance on ICE's implicit promise that she would remain at liberty so long as she complied with the conditions of her release and her removal remained significantly unlikely in the reasonably foreseeable future.

b. Due Process Required a Pre-Deprivation Hearing

As noted above, petitioner asserts due process requires a pre-deprivation hearing before a neutral arbiter to determine whether ICE has met its burden to justify re-detention. ECF No. 16 at 15-21, 29-30. Many courts, including this court, agree and have found that when a noncitizen subject to a final order of removal is released on OSUP and is re-detained years later, the noncitizen is entitled to a pre-deprivation hearing prior to re-detention. Huang v. Albarran, 818 F. Supp. 3d 1154, 1166 (E.D. Cal. 2026); Perez v. Warden, No. 1:26-cv-5225 KES SAB, 2026 WL 2210042, at *2-3 (E.D. Cal. July 31, 2026); Ghiassi v. Murray, No. 1:26-cv-1179 JLT SKO, 2026 WL 622184, at *7 (E.D. Cal. Mar. 5, 2026); N.D.N. v. Bondi, No. 1:25-cv-1587 DAD CKD,

2025 WL 3251102, at *5-6 (E.D. Cal. Nov. 21, 2025); J.L.R.P., 2025 WL 3190589, at *8-10; Avila, 2025 WL 2419262, at *3-5; Yang v. Kaiser, No. 2:25-cv-2205 DAD AC, 2025 WL 2791778, at *8-10 (E.D. Cal. Aug. 20, 2025); see also Guillermo M.R., 791 F. Supp. 3d 1021 (same for a noncitizen subject to a final order of removal and released on bond and conditions of supervised release). The undersigned examines some of these decisions below.

First, in granting a preliminary injunction against re-detention "for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge," this court in Yang v. Kaiser found that (1) Yang had a strong private interest in his continued release based on the seven years he spent on supervised release developing familial and community ties, (2) there is a high risk of erroneous deprivation where ICE fails to follow its own regulatory framework for re-detention and, even if they did follow their regulatory framework, the unilateral process lacks "any neutral review," and (3) the government's interest in detaining petitioner's without a pre-deprivation hearing is low because they involve minimal costs. Yang v. Kaiser, 2025 WL 2791778, at *8-10.

Subsequent cases elaborate with respect to the concerns regarding the risk of erroneous deprivation. For example, in granting a preliminary injunction against re-detention without notice and a pre-deprivation hearing before an immigration judge, this court in Guillermo M.R. found that petitioner had raised serious questions going to the merits of his procedural due process claim, in part, because the procedures for revocation of release afforded under 8 C.F.R. § 241.4 do not provide sufficient safeguards against erroneous deprivation where "each of those procedures is essentially no more than a request to ICE's arresting agents or their supervisors at headquarters to reconsider the agency's unilateral detention decision" and there is "no opportunity to have a neutral party evaluate ICE's unilateral determination of the contested facts." Guillermo, 791 F. Supp. 3d at 1034-35, 1038. The court further explained that absent evidence of urgent concerns, "[t]he Supreme Court has consistently held that 'the Constitution requires some kind of hearing before the State deprives a person of liberty or property." Id. at 1035 (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)).

In granting the petition for writ of habeas corpus, the court in J.L.R.P. found that, under

the Fifth Amendment Due Process Clause, the petitioner was entitled to a bond hearing prior to re-detention because (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and had built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. § 241.13 does not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs. J.L.R.P., 2025 WL 3190589, at *9-10. With respect to the risk of erroneous deprivation, the court noted "[a] neutral judge is one of the most basic due process protections" and that the Ninth Circuit has already explained the need for one in the post-removal order detention context where ICE has unilateral discretion whether to detain or release. Id. at *9.

> Diouf's own case illustrates why a hearing before an immigration judge is a basic safeguard for aliens facing prolonged detention under § 1231(a)(6). The government detained Diouf in March 2005. DHS conducted custody reviews under § 241.4 in July 2005 and July 2006. In both instances, DHS determined that Diouf should remain in custody pending removal because his "criminal history and lack of family support" suggested he might flee if released. In February 2007, however, an immigration judge determined that Diouf was not a flight risk and released him on bond. If the district court had not ordered the bond hearing on due process grounds, Diouf might have remained in detention until this day.

Id. (quoting Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011), abrogated on other grounds as recognized in Rodriguez Diaz v. Garland, 53 F.4th 1189 (9th Cir. 2022)). The court also expressed that "this reasoning applies even more forcefully here, where ICE failed to timely provide even the notice and interview required by its own regulations." Id. The court found that, because petitioner had been re-detained without a pre-deprivation hearing, and without following the regulatory procedures for revocation of release, ICE had violated petitioner's due process rights. The court ordered petitioner's immediate release and an injunction against petitioner's re-detention

> unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

Id. at *10.

The above cases clearly support the conclusion that procedural due process requires, absent urgent concerns, a pre-deprivation hearing when ICE seeks to re-detain a noncitizen subject to a final order of removal after years on supervised release. These cases, however, do not address—directly or indirectly—the more specific question presented by this case: whether evidence acquired after re-detention (e.g. a request for a travel document or procurement of a travel document) affects the process due at the time of re-detention. Several courts have weighed in and have found that it does not. Nguyen v. Bondi, No. 2:25-cv-2723 RAJ, 2026 W 183819, at *5 (N.D. Wash. Jan. 23, 2026); Yang v. Scott, No. 2:26-cv-0469 JNW, 2026 WL 632661, at *4 (W.D. Wash. Mar. 6, 2026); Vu, 2026 WL 1722908, at *9; Senechaleunsouk v. Blanche, No. 2:26-cv-2555 JHC, 2026 WL 2541935, at *3 (W.D. Wash. Aug. 28, 2026). For the following reasons, the undersigned agrees.

Like petitioner, the noncitizens in Nguyen and Vu were Vietnamese citizens who were ordered removed based on criminal convictions, released on an order of supervision due to the government's inability to remove them to Vietnam, and re-detained several years later based on ICE's alleged determination that there was now a significant likelihood of removal in the foreseeable future. In one case the likelihood of removal was argued to have changed due to "a change in circumstances and ongoing cooperation between the United States and Vietnam," Nguyen, 2026 WL 183819, at *1; in the other, ICE represented that it was "seeking a travel document to effect [petitioner's] expeditious removal to Vietnam," Vu, 2026 WL 1722908, at *3. In discussing the Mathews factors, and in particular the risk of erroneous deprivation, the court in Nguyen explained, "[t]he particular procedures used in this case—a unilateral determination by ERO of 'changed circumstances'" based on "ongoing cooperation between the United States and Vietnam," "despite having no travel document in hand, and no pre-detention hearing—created the high risk that resulted in Mr. Nguyen's unlawful detention." Nguyen, 2026 WL 183819, at *5. The court further explained, "Even if the Government might believe it has a valid reason to detain petitioner, this does not eliminate its obligation to effectuate detention in a manner that comports with due process. Additional safeguards, including notice and hearing before an immigration

court, may have prevented this regrettable outcome." Id. (citation omitted).

Similarly in Vu, the court explained how the facts of the case—in which respondents revoked Vu's OSUP on the purported grounds that his removal to Vietnam was significantly likely in the reasonably foreseeable future, although at the time ICE had not even applied for a travel document to Vietnam—exemplified why a pre-deprivation hearing would be meaningful. Vu, 2026 WL 1722908, at *9. "Vietnamese policy regarding repatriation of Vietnamese nationals from the U.S. appears to be complex and fact-specific." Id. A travel document obtained after re-detention "is no substitute for process." Id. (citing Yang v. Scott, 2026 WL 632661). "Requiring a pre-deprivation hearing before a neutral adjudicator would allow development of the meaningful factual record, decrease the risk of an erroneous deprivation, and provide a valuable procedural safeguard." Id.

Similarly, in Yang v. Scott and Senechaleunsouk, noncitizens were ordered removed to Laos based on criminal convictions, released on orders of supervision due to the government's inability to remove them to Laos, and re-detained several years later based on ICE's alleged determination that their removal was significantly likely in the foreseeable future because "ICE is seeking a travel document to effect [petitioner's] expeditious removal to Laos," and/or "Laos had changed it's 'internal policy regarding the issuance of travel documents.'" Senechaleunsouk, 2026 WL 2541935, at *1, *3; Yang v. Scott, 2026 WL 632661, at *1. In Yang, the court rejected respondents argument "that the revocation of Yang's OSUP is justified because there is now post-detention evidence—the travel document obtained February 2, 2026—that demonstrates a significant likelihood of removal." Yang v. Scott, 2026 WL 632661, at *4. As in Nguyen, the court in Yang explained that belief in a valid reason to detain does not eliminate the obligation to provide due process. Id. Likewise, in Senechaleunsouk, the court rejected the notion that a later acquired travel document or alleged changes to internal policies regarding the issuance of travel documents, without citation to sources for this change, could justify re-detention, by finding these facts established a high risk of erroneous deprivation absent pre-deprivation notice and an opportunity to be heard. Senechaleunsouk, 2026 WL 2541935, at *3-4.

Considering the legal landscape discussed above, the undersigned proceeds to address the

Mathews factors. First, petitioner's private interest is unquestionably strong. Prior to her re-detention, petitioner had been out of custody for nearly two decades. During that time, she built a life in the United States, with her parents and U.S. citizen daughter. Her re-detention has therefore indisputably resulted in the "grievous loss" of this liberty.

With respect to the erroneous risk of deprivation, the undersigned agrees with the cases cited above and finds the risk of erroneous deprivation absent a pre-deprivation hearing is remarkably high. The revocation of release procedures under 8 C.F.R. §§ 241.13 and 241.4, which involve a unilateral decision by ICE without review by a neutral arbiter are insufficient to guard against the risk of erroneous deprivation. A procedure for obtaining travel documents after re-detention does not alleviate the risk of erroneous deprivation, but instead illustrates the benefit of pre-deprivation procedural safeguards. The government may have valid grounds to revoke release, but that is no substitute for due process. Moreover, as discussed below, the present record shows ICE failed to follow its own revocation procedures, which itself raises grave concerns regarding the risk of erroneous deprivation.

Consistent with the cases above, the undersigned also finds that the government's interest in detaining petitioner without a hearing is low. Pre-deprivation hearings impose *fewer* burdens on the government than does detention. See Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (N.D. Cal. 2025) ("The effort and cost required to provide Petitioner with procedural safeguards are minimal); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps towards doing so; but its interest in doing so without a hearing is low."); Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) ("The costs to the public of immigration detention are staggering.") (internal quotations omitted); Pinchi v. Noem, 797 F. Supp. 3d 1025, 1037 (N.D. Cal. 2025).

On balance, the Mathews factors show that procedural due process required a custody hearing before an immigration judge *prior* to petitioner's re-detention on September 16, 2025, at which ICE had the burden to justify re-detention based on evidence that existed at the time ICE made the decision to re-detain. Because petitioner, Anh Thi Ngo, was not provided with such a hearing, the undersigned finds respondents violated her procedural due process rights and

recommends the petition be granted on this basis.

c. Due Process Required ICE Follow Its Own Regulations

Petitioner also asserts that due process requires, at a minimum, that ICE comply with its own regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), regarding revocation of release in the post-final order of removal context. ECF No. 16 at 7, 12, 19, 21. For the following reasons, the undersigned agrees.

i. ICE Failed to Provide a Valid Basis for Revocation as Required under 8 C.F.R. § 241.13(i)(2)

Under 8 C.F.R. § 241.13, release can be revoked only (1) when the noncitizen violates a condition of release or (2) when "on account of changed circumstances" it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Under 8 C.F.R. § 241.4, release can be revoked if "revocation is in the public interest," "[t]he purposes of release have been served, "[t]he alien violates any condition of release, "[i]t is appropriate to enforce a removal order or to commence removal proceeding against an alien," or "[t]he conduct of the alien, or any other circumstances, indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(l)(1)-(2).

Here, petitioner argues that none of the criteria for revocation of release under 8 C.F.R. §§ 241.13(i)(1)-(2), 241.4(l)(1)-(2) apply, and that there is no basis to believe her removal is likely in the reasonably foreseeable future. ECF No. 16 at 19. To the extent respondents respond to this argument, they argue petitioner's removal is significantly likely in the reasonably foreseeable future because respondents have obtained a travel document (changed circumstances) and are ready to reschedule petitioner's flight to be removed once her motion to reopen and terminate is adjudicated. ECF No. 19 at 2; see also ECF No. 26. Accordingly, the undersigned frames the issue as whether respondents complied with 8 C.F.R. § 241.13(i)(2), which requires changed circumstances.

Section 241.13(i)(2) has four requirements: "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Pham, 833 F. Supp. 3d at 1104 (quoting Kong v. United States,

62 F.4th 608, 619-20 (1st Cir. 2023) and collecting cases). "Changed circumstances that make [a noncitizen's] removal likely in the foreseeable future must have existed at or before the OSUP revocation; post-hoc justifications are inadequate." Pham, 833 F. Supp. 3d at 1109 (quoting Munagi v. McDonald, 813 F. Supp. 3d 225, 228 (D. Mass. 2025) ("The question before the Court is not whether petitioner's deportation is now likely in the reasonably foreseeable future but whether such likelihood existed at the time his [supervised release] was revoked."); Erazo Saravia v. Semaia, No. CV 5802 AS, 2026 WL 2679110, at *4 (C.D. Cal. Sept. 11, 2026) (Section 241.13 "makes clear that any 'changed circumstances' justifying a noncitizen's re-detention must be present at the time that the revocation of release occurs. Action taken by the government after revocation of release would not constitute 'changed circumstances' to justify revocation a the time the revocation occurred."). Travel document requested and/or received after the revocation of release are not changed circumstances that can justify revocation under § 241.13(i)(2) because they did not exist or occur at or before the time of revocation. Id.; Duong v. Charles, No. 1:25-cv-1375 SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (finding ICE failed to meet its burden because seeking travel documents almost a month after re-detaining petitioner could not constitute revocation "on account of" legally relevant changed circumstances); Ly v. Warden, Mesa Verde Det. Ctr., No. 1:26-cv-5839 TLN CSK, 2026 WL 3001802, at *4 (E.D. Cal. Oct. 6, 2026) (same); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (finding that events that occurred after the Notice of Revocation, such as requesting travel documents, "could not have constituted the supposedly changed circumstances underlying the Notice" and "Respondents' post-hoc explanation is too little, and too late"); Sphabmixay v. Noem, No. 25CV2648 LL VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025) (finding that petitioner was entitled to release, despite respondents' securing travel documents for petitioner after re-detention because respondents' failed to comply with the requirements under §§ 241.13(i) and 241.4(l)); Tran v. Noem, No. 25-cv-2391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (same); Truong v. Noem, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (same); see also Orellana Quintanilla v. Mullin, No. 1:26-cv-6627 DJC CKD, 2026 WL 2660124, at *3 (E.D. Cal. Sept. 9, 2026) (finding removal of petitioner in September

2025 did not show changed circumstances under 8 C.F.R. § 241.13(i)(2) to justify petitioner's re-detention in July 2025 because a post-hoc justification is insufficient). "A decision to revoke that lacks a supporting basis, perhaps in hopes that such a basis will be identified post-hoc, violates the regulatory scheme." Pham, 833 F. Supp. 3d at 1108.

As noted above, respondents contend that the travel document obtained for petitioner in March 2026 constitutes changed circumstances. ECF No. 9, 19.[4] Although this document has now expired, ECF Nos. 9-1 and 24, respondents appear to continue to argue changed circumstances, claiming "[t]he past recent issuance of a travel document is evidence that the government will again be successful in obtaining a travel document and effectuating the order of removal." ECF No. 26 at 2.[5] However, as petitioner points out and the case law above explains, the travel document was issued March 12, 2026, and cannot constitute a changed circumstance because it was obtained after petitioner's release was revoked. To the extent respondents are able to obtain a new travel document, the new travel document would suffer from the same defect—particularly where it would have been acquired more than a year after the revocation of petitioner's release.

Because respondents fail to identify any changed circumstances that occurred before September 16, 2025, which justified the revocation of petitioner's release, the undersigned finds ICE violated its own regulatory scheme under 8 C.F.R. § 241.13(i)(2), and thus also violated petitioner's due process rights. The undersigned therefore recommends the petition be granted on this basis.[6]

---

[4] Respondents' responses to the petitions appear to focus primarily, if not entirely, on petitioner's prolonged detention claim—Claim Two. ECF Nos. 9, 19, 26. Out of an abundance of caution, the undersigned extends its analysis to consider the applicability of these arguments on petitioner's procedural due process claims under Claim Three.

[5] See note 3.

[6] Notably, even if the court were to find that respondents complied with 8 C.F.R. § 241.13(i)(2), the recommendation to grant the petition on Claim Three stands. As discussed above, respondents' failure to provide petitioner a pre-deprivation hearing before an immigration judge prior to her re-detention violated her procedural due process rights, and, as discussed below, respondents failure to follow its own revocation procedures under 8 C.F.R. § 241.13(i)(3) or § 241.4(l)(1), which were established to protect petitioner's constitutional rights, constitutes a violation of petitioner's due process rights. Each, alone, are sufficient to rule in petitioner's favor.

ii. ICE Failed to Provide Notice and a Prompt Interview as Required Under 8 C.F.R. § 241.13(i)(3)

8 C.F.R. § 241.13(i)(3) requires notice upon revocation of the reasons for revocation of release or parole, and an "initial informal interview promptly after [re-detention] to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).[7] To comply with the notice requirement, a notification of revocation of release must provide the "reasons for revocation," which include what circumstances have changed and why petitioner's removal was not previously but is now significantly likely in the reasonably foreseeable future. Pham, 833 F. Supp. 3d at 1110-11; Sarail A., 803 F. Supp. at 780; Saqib v. Andrews, No. 1:25-cv-2035 DC CSK, 2026 WL 350830, at *5 (E.D. Cal. Feb. 9, 2026); see also Roble v. Bondi, 803 F. Supp. 3d 776, 772 (D. Minn. 2025) (the notification requirement requires the government provide the "reasons" for revocation).

A notice that provides nothing more than conclusory statements reciting back to the regulation's requirements is not adequate notice of the reasons for petitioner's revocation. Pham, 833 F. Supp. 3d at 1110-11; Sarail A., 803 F. Supp. 3d at 780 (notice merely citing changed circumstances without any explanation is insufficient under § 241.13(i)(3)); Roble, 803 F. Supp. 3d at 772 ("[p]roviding a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the "reasons" why [a noncitizen's] Order of Supervision was revoked"). "[F]ailure to notify petitioner of the reasons for revocation beyond 'changed circumstances' . . . violates 8 C.F.R. § 241.13(i)(3)." Saqib, 2026 WL 350830, at *5; see also Pham, 833 F. Supp. 3d at 1110-11 (finding violation of § 241.13(i)(3) because Notice of Revocation of Release merely recites "changed circumstances" language and "does not explain what circumstances changed and why petitioner's removal was now significantly likely in the reasonably foreseeable future"); Sarail A., 803 F. Supp. 3d at 780 (finding violation of

[7] Section 241.4(l)(1) requires the same notice and prompt interview. 8 C.F.R. § 241.4(l)(1). Because the analysis under either is the same, and the court need not limit the discussion to cases discussing one or the other. See Osorto-Coello v. Warden of California City Det. Facility, No. 1:26-cv-3231 DC AC, 2026 WL 1470603 (E.D. Cal. May 26, 2026) (explaining that "the analysis under [8 C.F.R. § 241.13 and § 241.4] would be the same because . . . both provisions contain identical language regarding the notice and interview requirements for revocation of release").

§ 241.13(i)(3) based notice that "merely cited 'changed circumstances' without any explanation").

When the government fails to include the reasons for revocation of release in the notice of revocation, it also deprives the noncitizen of the opportunity to respond to those reasons and therefore violates 8 C.F.R. § 241.13(i)(3). Pham, 833 F. Supp. 3d at 1111 ("Respondents cannot reasonably claim petitioner had an opportunity to respond if he did not know what circumstances ICE believed had changed and why it was now significantly likely that he would be removed to Vietnam in the reasonably foreseeable future."); Sarail A., 803 F. Supp. 3d at 782 ("without those reasons [for revocation], the petitioner has no way to know what evidence or information is responsive"); Roble, 803 F. Supp. 3d at 772 (petitioner "cannot be expected to 'respond to the reasons for revocation stated in the notification' if the notification does not actually state any reasons for revocation").

Here, the record shows that when petitioner was re-detained on September 16, 2025, she was told "things have changed" and that "Vietnam accepts people now," but was not offered any additional explanation. ECF No. 16 at 7. The next few days, she was transferred to several holding centers before arriving at California City Detention Facility. Id. At no point during these transfers did officers adequately articulate the reasons for her re-detention or interview her to allow her to respond to those reasons. Id. In November 2025, two months after her re-detention, ICE officers interviewed petitioner for the first time, at which point they gather information to attempt to remove her to Vietnam; they did not interview her about the reasons for her re-detention. Id. In January 2026, ICE officers told petitioner her travel documents had been denied and in March 2026, ICE officers conducted a six-month post-order custody review and reiterated the denial of petitioner's travel documents. Id.

Respondents do not dispute these facts, nor do they provide evidence of a written notice of revocation of release, much less a notice stating the "reasons for revocation," including what circumstances have changed and why petitioner's removal was not previously but is now significantly likely in the reasonably foreseeable future. Respondents also failed to offer any evidence that they provided petitioner an informal and "prompt" interview to respond to the

reasons for revocation of release. Accordingly, the undersigned finds that respondents failed to comply with the requirements of 8 C.F.R. § 241.13(i)(3). See H.R. G.A. v. Rios, No. No. 2:26-cv-2449 FLA CTS, 2026 WL 3094310, at *7 (C.D. Cal. Oct. 15, 2026) (finding respondents "conceded" that they failed to comply with their own regulations "by failing to offer any evidence or argument to suggest that they did, in fact, comply with those regulations).[8]

Because respondents fail to provide petitioner with adequate notice and a meaningful opportunity to respond as required under 8 C.F.R. §§ 241.13(i)(3), the undersigned finds that ICE violated its own regulatory scheme and as such violated petitioner's due process rights. The undersigned therefore recommends the petition also be granted on this basis.

3. Remedy For Claim Three

Many courts, including this one, have concluded that the remedy for a constitutional violation infecting detention—such as ICE's failure to (1) provide a pre-deprivation hearing, absent urgent circumstances, before revoking supervised release of a noncitizen who is subject to a final order of removal, or (2) comply with its own regulations—is release and an injunction against re-detention absent specific pre-deprivation procedures. Constantinovici v. Bondi, 806 F. Supp. 3d 1154, 1164 (S.D. Cal. 2025) (collecting cases) (ordering petitioner's release because ICE failed to comply with its own regulations regarding revocation of release); H.R. G.A. v. Rios, No. 2:26-cv-2449 FLA CTS, 2026 WL 3094310, at *7 (C.D. Cal. Oct. 15, 2026) (ordering petitioner's release and issuing permanent injunction against petitioner's re-detention absent

---

[8] Notably, even if the court were to accept the statements that "things have changed" and "Vietnam accepts people now," as sufficient notice of the reasons for revocation of release—which it does not—ICE violated its own regulations by failing to provide a (1) "prompt" informal interview at which (2) petitioner had an opportunity to response to the reasons for revocation of her release. Pham, 833 F. Supp. 3d at 1112 (finding violation of § 241.13(i)(3) "because the record shows petitioner was not offered an interview until three months after his re-detention and that the offered interviews related to the reasons for petitioner's continued detention and/or release and not an opportunity to contest the reasons for revocation of his prior release."). It is undisputed that the informal interview petitioner received two months into her detention was to obtain information to effectuate petitioner's removal and not to provide petitioner an opportunity to respond to the stated reasons for revocation of release. See ECF No. 16 at 7; ECF Nos. 9, 19, 26. And, even if respondents argued—which they do not—that the informal interview was provided in order to allow petitioner to respond to the reasons for revocation of release, there is nothing "prompt" about an initial interview two months into detention.

compliance with federal laws and regulations because respondents failed to comply with their own regulations); Pham, 833 F. Supp. 3d at 1113-14, 1118 (ordering petitioner's release and issuing permanent injunction against petitioner's re-detention absent compliance with regulations, statutes, and due process because respondents failed to comply with their own regulations); Yang v. Scott, 2026 WL 632661, at *3-6 (ordering petitioner's release and issuing permanent injunction against re-detention absent pre-detention notice and hearing before immigration court because respondents failed to comply with their own regulations and to provide petitioner with a pre-deprivation hearing) (collecting cases); Guillermo M.R., 791 F. Supp. 3d at 1029-38 (issuing preliminary injunction against re-detaining petitioner without notice and a pre-deprivation hearing before an immigration judge because petitioner raised serious questions going to the merits of his procedural due process claim); see also Perez v. Warden, 2026 WL 2210042, at *1-3 (July 31, 2026) (ordering petitioner's release because respondents' failure to comply with their own regulations violates due process, and issuing a permanent injunction against re-detention "unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community such that his physical custody is legally justified"); J.L.R.P., 2025 WL 3190589, at *3-10 (same); Ghiassi, 2026 WL 622184, at *3-7, *9 (same but preliminary injunction); Huang v. Albarran, 818 F. Supp. 3d at 1162-66, 1168 (same but preliminary injunction); N.D.N. v. Bondi, 2025 WL 3251102, at *3-6, *8 (same but issuing permanent injunction against re-detention "for any purpose, absent exigent circumstances, without providing petitioner notice and a pre-detention hearing before an immigration judge"); Yang v. Kaiser, 2025 WL 2791778, at *3-11 (same but preliminary injunction). This is true even when—as here—ICE has procured travel documents for the noncitizen after the revocation of their release. Yang v. Scott, 2026 WL 632661, at *2, *4-5 (ordering release despite valid travel document); Duong, 2025 WL 3187313, at *2, *5-6 (same); Sphabmixay, 2025 WL 3034071, at *3 (same); Tran v. Noem, 2025 WL 3005347, at *2 (same); Truong v. Noem, 2025 WL 2988357, at *6 (same); see also Orellana Quintanilla, 2026 WL

2660124, at *3-4 (ordering petitioner's release and issuing a permanent injunction against re-detention without changed in circumstances despite evidence that respondents could, once again, remove petitioner to Mexico); Nguyen, v. Noem, No. 25-cv-2792 LL VET, 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) ("courts 'have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered. . . . This is so even when . . . the Government has obtained a travel document back to his or her country of origin after their re-detainment."). Doing so ensures a noncitizen is returned to "the status quo before his release was improperly revoked," and that respondents will comply with due process before re-detaining and removing him based on a valid travel document. Yang v. Scott, 2026 WL 632661, at *5 (collecting cases); Yang v. Kaiser, 2026 WL 2791778, at *11 ("[t]he court possesses the authority to release petitioner in order to preserve the status quo," which was "the last uncontested status of petitioner [ ] on June 3, 2025, prior to his re-detention"). The undersigned agrees with these above-cited courts and therefore recommends that petitioner be released and that the court enjoin respondents from re-detaining petitioner absent pre-deprivation procedures.

iii. Claim Five: Third-Country Removal Policies Violate Due Process

The amended petition asserts that the current procedures relating to the removal of persons to third countries, which provide no "notice or process *at all*," violate due process, 8 U.S.C. § 1231, applicable implementing regulations, the Convention Against Torture ("CAT"), and the Administrative Procedures Act ("APA"). ECF No. 16 at 23-27, 31 (emphasis in original). By way of relief, petitioner seeks an order enjoining respondents from attempting to remove her "to a third country unless or until they provide her with constitutionally and statutorily compliant notice and an opportunity to present any fear-based claims in reopened removal proceedings." Id. at 27, 31. Despite multiple opportunities to do so, respondents did not respond to this claim or request for relief.

Although the record contains no explicit evidence that ICE intends to remove the petitioner to a country other than Vietnam—other than ICE's failure to contest the future application of third-country policies and a statement by an ICE officer that the agency "would

follow its process" with respect to third-country removal policies in this case, ECF No. 16 at 7—the court finds the petitioner's claim to be substantiated. Third-country removal policies allow the government to bypass vital procedural safeguards secretly and instantaneously. See Bagat v. Andrews, No. 1:26-cv-0346 DJC AC, 2026 WL 2856247, at *4 (E.D. Cal. Sept. 16, 2026), findings and recommendations adopted in Bagat v. Andrews, 2026 WL 2908686 (E.D. Cal. Sept. 28, 2026). The existence of these policies, combined with the government's prior attempts to implement them during ongoing litigation, establishes a real and imminent risk to the petitioner's rights. Id.; D.V.D. v. United States Department of Homeland Security, 821 F. Supp. 3d 102, 145-64 (D. Mass. 2026) ("Previously, one could have found some comfort in the idea that the Government would not intentionally engage in this kind of gamesmanship because, at least as of March 24, 2025, it claimed to believe that late designations could not prevent fear-based claims. However, given the existence of the March Guidance, it defies logic to imagine that DHS would not avail itself of this obviously less burdensome, if somewhat furtive, approach."); Pham, 833 F. Supp. 3d at 1116-17 (adopting and incorporating by reference the comprehensive analysis of the third-country removal policy in D.V.D., and finding petitioner is entitled to relief for the reasons stated in D.V.D.).

Relying on the analysis in Pham and D.V.D., the undersigned finds that the third country removal policy violates petitioner's constitutional rights to notice and a meaningful opportunity to respond. See Bagat, 2026 WL 2856247, at *4; Pham, 833 F. Supp. 3d at 1116-17; D.V.D., 821 F. Supp. 3d at 148-65, 168 (setting aside the March Guidance as not in accordance with the Fifth Amendment Due Process Clause in violation of 5 U.S.C. § 702(2)(A)). Other courts in this circuit have also recognized that ICE's current policy is unconstitutional. Oth v. Chestnut, No. 1:26-cv-1367 KES HBK, 2026 WL 2836723 (E.D. Cal. Sept. 21, 2026) (collecting cases); see Arreaza Sanchez v. Janecka, No. 5:26-cv-4638 KES, 2026 WL 3122453, at *7 (C.D. Cal. Oct. 19, 2026) (collecting cases); see also Berhe v. Mullin, No. 3:26-cv-2828-JES-VET, 2026 WL 2188211, *2 (S.D. Cal. July 29, 2026) ("[C]ourts in this district and throughout the Ninth Circuit continue to hold, as they did when this Court issued its prior order, that the March 30 Memo's diplomatic-assurances exception violates due process."); Giebashvili v. Noem, No. 25-cv-3432

BJC VET, 2026 WL 114422, *3 (S.D. Cal. Jan. 15, 2026) ("Several courts within the Ninth Circuit have held the policies provided in the ICE [July 9, 2025] memo. . . violates due process.") (collecting cases). The undersigned also agrees with the reasoning in those decisions.

Accordingly, the undersigned recommends that the court grant the petition on Claim Five and enjoin respondents from removing petitioner to a third country absent adequate notice and a meaningful opportunity to raise a fear of removal claim.

iv. Claims One, Two, and Four

Considering (1) the above findings and recommendations with respect to Claims Three and Five, (2) the interests of judicial economy, and (3) that petitioner's other claims seek the same or similar relief, the undersigned recommends the court dismiss Claims One, Two, and Four without prejudice.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that respondents' motion for reconsideration (ECF No. 26) is GRANTED to the extent that the minute order at ECF No. 25 is VACATED.

IT IS HEREBY RECOMMENDED that:

1. Petitioner's amended petition for writ of habeas corpus (ECF No. 16) be GRANTED on Claims Three and Four, as follows:

   a. Respondents shall IMMEDIATELY RELEASE petitioner Anh Thi Ngo (A# 071-007-750) with the same conditions she was subject to immediately prior to her detention on September 16, 2025. At the time of release, respondents must return all of petitioner's documents and possessions.

   b. Respondents shall not impose any additional restriction on petitioner unless it is determined to be necessary at a future pre-deprivation/custody hearing.

   c. Respondents are ENJOINED AND RESTRAINED from:

      i. Re-detaining petitioner, absent exigent circumstances, unless they provide at least 7 days' written notice to petitioner and hold a pre-deprivation bond hearing before a neutral decisionmaker, at which hearing respondents will bear the burden of demonstrating (1) material changed circumstances that

there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future, or (2) petitioner is a flight risk or danger to the community such that her physical custody is legally justified. Petitioner's eligibility for bond must be considered at that time.

ii. Removing petitioner to a third country unless respondents adhere to the following procedures:

1. Provide petitioner a meaningful opportunity and a minimum of ten days to raise a fear-based claim for protection prior to removal;
2. If petitioner demonstrates reasonable fear of removal to the third country, respondents must reopen petitioner's removal proceedings; and
3. If petitioner is not found to have demonstrated a reasonable fear of removal to the third country, respondents must provide a meaningful opportunity and a minimum of fifteen days for petitioner to seek reopening of his immigration proceedings.

2. If the requested relief is granted under Claims Three and Five, in the interest of judicial economy, the court DISMISS WITHOUT PREJUDICE Claims One, Two and Four.

3. Petitioner's request for attorney's fees and costs (ECF No. 16 at 32) be DENIED WITHOUT PREJUDICE to bringing a properly noticed and supported motion.

4. Within three days of an order adopting these findings and recommendations, respondents be required to file a notice of compliance confirming petitioner's release and that the conditions of her supervision are the same as those to which she was subject prior to her September 16, 2025, detention.

5. The Clerk of the Court be directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written

briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 29, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE